## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WILHELM,<br><br>Plaintiff,<br><br>v.<br><br>ZOGENIX, INC., JAMES B. BREITMEYER, STEPHEN J. FARR, MARY E. STUTTS, ERLE T. MAST, RENEE P. TANNENBAUM, DENELLE J. WAYNICK, LOUIS C. BOCK, CAM L. GARNER, CAROLINE M. LOEWY, and MARK WIGGINS,<br><br>Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Robert Wilhelm ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action against Zogenix, Inc. ("Zogenix" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, arising out of their attempt to sell the Company to UCB S.A. ("UCB"), through UCB's subsidiary Zinc Merger Sub, Inc. ("Purchaser") via a tender offer (the "Offer") (the "Proposed Transaction").

2. On January 19, 2022, Zogenix and UCB issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), to sell

Zogenix to UCB, pursuant to which, Zogenix stockholders will receive (i) $26.00 in cash; and (ii) one non-transferable contingent value right (each, a "CVR"), which represents the right to receive a contingent payment of $2.00, if a specified milestone is achieved on or prior to December 31, 2023, for each share of Zogenix common stock they own (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Offer on February 1, 2022. The Offer is scheduled to expire one minute after 11:59 p.m., eastern time, on March 1, 2022.

3. On February 1, 2022, Zogenix filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the SEC. The 14D-9 is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by BofA Securities, Inc. ("BofA") and SVB Leerink, LLC ("SVB Leerink"); and (iii) BofA's and Company insiders' potential conflicts of interest. Without additional information, the 14D-9 is materially misleading in violation of the federal securities laws.

4. For these reasons, and as set forth in detail herein, Plaintiff alleges that defendants violated Sections 14(d), 14(e) and 20(a) of the Exchange Act as Zogenix's stockholders need such information in order to make an informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Zogenix.

9. Defendant Zogenix is a Delaware corporation with its principal executive offices located at 5959 Horton Street, Suite 500, Emeryville, California 94608. Zogenix's common stock is traded on the Nasdaq Global Market under the ticker symbol "ZGNX."

10. Defendant James B. Breitmeyer ("Breitmeyer") has served as a director of the Company since March 2014.

11. Defendant Stephen J. Farr ("Farr") is co-founder of the Company and has served as Chief Executive Officer ("CEO") since April 2015, and President and a director since the Company's inception in May 2006. Defendant Farr also previously served as the Company's Chief Operating Officer ("COO") from May 2006 to March 2013.

12. Defendant Mary E. Stutts ("Stutts") has served as a director of the Company since September 2020.

13. Defendant Erle T. Mast ("Mast") has served as a director of the Company since May 2008.

14. Defendant Renee P. Tannenbaum ("Tannenbaum") has served as a director of the Company since February 2015.

15. Defendant Denelle J. Waynick ("Waynick") has served as a director of the Company since September 2020.

16. Defendant Louis C. Bock ("Bock") has served as a director of the Company since August 2006.

17. Defendant Cam L. Garner ("Garner") is co-founder of the Company and has served as Chairman of the Board and a director since August 2006.

18. Defendant Caroline M. Loewy ("Loewy") has served as a director of the Company since September 2020.

19. Defendant Mark Wiggins ("Wiggins") has served as a director of the Company since May 2011.

20. Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

21. Relevant non-party UCB is a global biopharmaceutical company focused on the discovery and development of innovative medicines and solutions to transform the lives of people living with severe diseases of the immune system or of the central nervous system. With more than 8,000 people in approximately 40 countries, the company generated revenue of €5.3 billion in 2020.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22. Zogenix is a global biopharmaceutical company committed to developing and commercializing therapies with the potential to transform the lives of patients and their families living with rare diseases. The Company's first rare disease therapy, FINTEPLA (fenfluramine) oral solution, has been approved by the U.S. Food and Drug Administration and the European Medicines Agency and is in development in Japan for the treatment of seizures associated with

Dravet syndrome, a rare, severe lifelong epilepsy. The Company has three additional late-stage development programs: one in a rare epilepsy called Lennox-Gastaut syndrome, one for the treatment of seizures associated with CDKL5, and one in a mitochondrial disease called TK2 deficiency. In December 2020, Zogenix entered into a collaboration, option and license agreement with Tevard Biosciences to identify and develop potential next-generation gene therapies for Dravet syndrome and other genetic epilepsies.

23.     On November 4, 2021, the Company announced its third quarter 2021 financial results. The Company recorded $22.6 million in revenue for the third quarter ended September 30, 2021, which was an increase of 20% as compared to the $18.8 million recorded in the second quarter of 2021. FINTEPLA net product sales reached $21.4 million representing quarter-over-quarter increases of 22%. Reflecting on the Company's results, defendant Farr commented:

> In the third quarter, we made significant progress against our corporate objectives in commercial operations and late-stage clinical development programs. We are pleased with the ongoing launch of FINTEPLA in the U.S. and EU and are encouraged with the positive trends that support continued adoption in Dravet syndrome. With the sNDA submitted for LGS, we are moving forward with regulatory submissions for LGS in the EU and a J-NDA in Japan for Dravet syndrome by the end of the year. We are excited to have the opportunity to potentially serve more patients who could benefit from FINTEPLA.
>
> Concurrently, we are advancing our late-stage development pipeline, notably our global Phase 3 study of FINTEPLA in CDD and concluding studies of MT1621 for the treatment of Tk2 deficiency.

24.     On January 19, 2022, Zogenix and UCB issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> BRUSSELS and EMERYVILLE, Calif., Jan. 19, 2022– UCB (Euronext: UCB) and Zogenix (NASDAQ: ZGNX) announced today that the companies have entered into a definitive agreement under which UCB would acquire Zogenix, Inc., a global biopharmaceutical company commercializing and developing therapies for rare diseases. Under the terms of the agreement, UCB will commence a tender offer to purchase all outstanding shares of Zogenix for a purchase price per share of US$ 26.00 in cash at closing, plus a contingent value right (CVR) for a potential cash

payment of US$ 2.00 upon EU approval by December 31, 2023, of FINTEPLA® as an orphan medicine for treatment of Lennox-Gastaut syndrome (LGS). The upfront consideration represents a 72% premium to Zogenix shares based on the 30-day volume weighted average closing stock price of Zogenix prior to signing. The total transaction is valued at up to approximately US$ 1.9 billion / € 1.7 billion.

The board of directors of both companies have unanimously approved the transaction, the closing of which remains subject to the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions.

The transaction will broaden and build upon UCB's role as a leader in, and our continued commitment to, addressing unmet needs of people living with specific or rare forms of epilepsy, in particular, adding FINTEPLA® to UCB's existing product line. FINTEPLA® has been approved by the U.S. Food and Drug Administration (FDA)1 and the European Medicines Agency (EMA) and is under regulatory review in Japan, for the treatment of seizures associated with Dravet syndrome in patients two years of age and older. Zogenix is also pursuing indications for the use of FINTEPLA® in the treatment of seizures associated with additional rare epilepsies, Lennox-Gastaut syndrome (LGS) and CDKL5 Deficiency Disorder (CDD). Zogenix has submitted a Type II Variation Application to the EMA, and the U.S. FDA recently accepted for filing Zogenix's supplemental New Drug Application (sNDA), granting Priority Review, for LGS. Beginning in childhood, Dravet syndrome and Lennox-Gastaut syndrome are two of the most devastating and life-long forms of epilepsy.

"The proposed acquisition of Zogenix reinforces UCB's sustainable patient value strategy and continued commitment to addressing unmet needs of people living with epilepsy with an increasing focus on those living with specific or rare forms of epilepsy, where few options exist. Complementing UCB's existing therapeutic offerings, the Zogenix acquisition provides UCB with an approved medicine for a life-threatening, rare infant- and childhood-onset epilepsy marked by frequent and severe treatment-resistant seizures, that are particularly challenging to treat," said Charl van Zyl, Executive Vice President, Neurology & Head of Europe/International Markets, UCB. "Utilizing our deep expertise, experience and global capabilities, we plan to accelerate access for patients to the treatment. We look forward to welcoming the Zogenix team to UCB, benefiting from their insights and working together to maximize the reach and impact of their medicines for the benefit of as many people as possible."

"We are delighted to announce UCB's proposed acquisition of Zogenix, recognizing the value of our lead medicine, both for the important role it has already begun to play for Dravet patients and their caregivers, and for its potential to help many others in the future," said Stephen J. Farr, PhD, President and Chief Executive Officer of Zogenix. "We are excited for the potential opportunities ahead of us, working together to accelerate our mission and progress to improve the care

of patients in need of new therapies. We believe this transaction is in the best interests of both patients and our shareholders."

**Strategic Benefits**

- **Builds on UCB's continued epilepsy ambitions**: Acquisition provides medicine that complements UCB's existing symptomatic treatments, bringing significant and differentiated value to patients suffering from Dravet syndrome and, if approved, from seizures associated with Lennox-Gastaut syndrome and potentially other rare epilepsies.

- **Expands benefits for patients globally**: UCB brings an established global footprint, together with deep research and development, commercial, medical, and regulatory expertise in epilepsy, which will be utilized to rapidly advance and optimize the availability of these new treatments and reach additional patients.

- **Enhances future epilepsy pipeline and strategic priorities in rare/orphan diseases**: Zogenix's pipeline will add to UCB's short-term and long-term epilepsy pipeline, as well as provide critical learnings in rare/orphan disease health ecosystems.

- **Enhances UCB's top-line growth**: FINTEPLA® was launched in the U.S. and Europe in 2020 and has significant potential for usage in other seizure types. It is expected that the proposed acquisition, if completed, will contribute to UCB's revenue growth upon closing and will be accretive to UCB's earnings in 2023.

**Transaction Terms, Approvals and Time to Closing**

Under the terms of the acquisition agreement, UCB, through a wholly-owned subsidiary, Zinc Merger Sub, Inc., will initiate a tender offer to acquire all outstanding shares of Zogenix for a purchase price of US$ 26.00 per share in cash, plus one non-tradeable CVR. The CVR will entitle holders to an additional cash payment of US$ 2.00 per share if a regulatory milestone related to approval of FINTEPLA® for treatment of seizures associated with Lennox-Gastaut syndrome (LGS) is achieved by or before December 31, 2023. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions. Upon the successful completion of the tender offer, UCB's acquisition subsidiary will be merged into Zogenix, and any remaining shares of common stock of Zogenix will be cancelled and converted into the right to receive the same consideration per share offered in the tender offer. The transaction is expected to close by the end of the second quarter of 2022. There can be no assurance any payments will be made with respect to the CVR.

**Financing and Guidance**

The acquisition of Zogenix will be financed by a combination of available cash resources and a new term loan. The transaction is not subject to any financing condition. In addition to contributing to UCB's revenue growth after closing, the acquisition of Zogenix is expected to be accretive to UCB's earnings from 2023 onwards.

**Advisors**

Lazard and Barclays are acting as financial advisors to UCB in relation to the transaction. Covington & Burling LLP is acting as legal advisor to UCB on this transaction.

BofA Securities and SVB Leerink are acting as financial advisors to Zogenix on this transaction. Latham & Watkins LLP is acting as legal advisor to Zogenix on this transaction.

**The 14D-9 Misleads Zogenix Stockholders by Omitting Material Information**

25. On February 1, 2022, defendants filed the materially misleading and incomplete 14D-9 with the SEC. Designed to convince Zogenix's stockholders to tender their shares in the Proposed Transaction, the 14D-9 is rendered misleading by the omission of critical information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by BofA and SVB Leerink; and (iii) BofA's and Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections*

26. The 14D-9 omits material information regarding the Company's financial projections.

27. The 14D-9 fails to disclose all line items underlying the Company's: (i) Transaction-Related Expenses and Income; (ii) Adjusted EBIT; and (iii) Unlevered Free Cash Flow.

28. Additionally, the 14D-9 notes that the projections are risk-adjusted. Yet, the 14D-9 fails to disclose a quantification of the assumptions underlying the risk-adjusted projections, including with respect to the "probability of regulatory approvals of Fintepla® in additional indications and MT-1621, launch timing, pricing, sales ramp, market growth, share of supply, competition, market exclusivity, research and development expenses, general and administrative expenses, and other relevant factors related to the development and commercialization of the Company's product candidates." 14D-9 at 28. The 14D-9 further fails to disclose the non-risk-adjusted projections so Zogenix stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

29. The 14D-9 further fails to disclose "the 2022 portion of the Financial Projections" that were presented in preliminary form to UCB. *See id.* at 28.

30. The omission of this material information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following section of the 14D-9: "Certain Unaudited Prospective Financial Information."

*Material Omissions Concerning BofA's and SVB Leerink's Financial Analyses*

31. The 14D-9 omits material information regarding BofA's and SVB Leerink's financial analyses.

32. The 14D-9 describes BofA's and SVB Leerink's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of BofA's and SVB Leerink's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Zogenix's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what

weight, if any, to place on BofA's and SVB Leerink's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

33. With respect to BofA's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose: (i) the terminal year cash flows used by BofA in the analysis; (ii) the estimated benefits from the Company's NOLs as of December 31, 2021 and from the Company's future losses over the period from calendar year 2021 through calendar year 2023, as provided by the Company's management; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.00% to 12.0%; (iv) net cash; (v) the estimate of net cash proceeds to be received by the Company in connection with a future equity financing assumed to occur in the first quarter of 2022; (vi) the value of the Convertible Notes utilized in the analysis; and (vii) the Company's fully diluted outstanding shares.

34. With respect to BofA's *Selected Precedent Transactions Analysis*, the 14D-9 fails to disclose: (i) the Company's net cash; (ii) the value of the Convertible Notes utilized in the analysis; (iii) the individual inputs and assumptions underlying the discount rate of 10.50%; and (iv) the Company's fully diluted outstanding shares.

35. With respect to BofA's *Present Value of Wall Street Analyst Price Targets* analysis, the 14D-9 fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

36. With respect to BofA's *Premia Calculations* analysis, the 14D-9 fails to disclose: (i) the transactions observed; and (ii) the individual premiums observed for each of the transactions.

37. With respect to SVB Leerink's *SVB Leerink Analysis of Consideration*, the 14D-9 fails to disclose the individual inputs and assumptions underlying the discount rate range of 8.00% to 9.75%.

38. With respect to SVB Leerink's *Discounted Cash Flow Analysis of SVB Leerink*, the 14D-9 fails to disclose: (i) the metric the perpetuity growth rate range of negative 20% to negative 30% was applied to in the terminal value calculation, and quantification thereof; (ii) the individual inputs and assumptions underlying the discount rate range of 10.00% to 13.00%; and (iii) the Company's fully diluted outstanding shares.

39. With respect to SVB Leerink's analysis of Wall Street analysts' price targets, the 14D-9 fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

40. The omission of this material information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following section of the 14D-9: "Opinions of the Company's Financial Advisors."

*Material Omissions Concerning BofA's and Company Insiders' Potential Conflicts of Interest*

41. The 14D-9 fails to disclose material information concerning potential conflicts of interest faced by one of the Company's financial advisors, BofA.

42. The 14D-9 sets forth in connection with the Proposed Transaction "[t]he Company, at its discretion, may also pay to BofA Securities a discretionary fee of $2.0 million in connection with the Offer and the Merger." *Id*. at 38. The 14D-9, however, fails to disclose the agreed parameters for such additional discretionary fee, the criteria BofA needs to satisfy to receive the additional fee, and whether the Company anticipates paying BofA the additional fee.

43. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44. Further, the 14D-9 fails to disclose material information concerning the potential conflicts of interest faced by Zogenix insiders.

45. The 14D-9 fails to disclose whether any of Zogenix's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between UCB and Zogenix's executive officers, including who participated in all such communications, when they occurred and their content. The 14D-9 further fails to disclose whether any of UCB's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

46. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47. The omission of this material information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Opinions of the Company's Financial Advisors," "Background and Reasons for the Company Board's Recommendation" and "Arrangements with Current Executive Officers and Directors of the Company."

48. The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the other stockholders of Zogenix, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Offer. Plaintiff has no adequate remedy at law. Only

through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. Defendants have caused the 14D-9 to be issued with the intention of soliciting Zogenix stockholders to tender their shares in the Offer.

51. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

52. The 14D-9 violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the 14D-9 false and/or misleading.

53. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

54. The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the other stockholders of Zogenix, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Offer. Plaintiff has no adequate remedy at law. Only

through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. Defendants violated Section 14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

57. Defendants knew that Plaintiff would rely upon their statements in the 14D-9 in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

58. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

59. Plaintiff repeats all previous allegations as if set forth in full.

60. The Individual Defendants acted as controlling persons of Zogenix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Zogenix and participation in or awareness of the Company's operations or

intimate knowledge of the false statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

63. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The 14D-9 purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

64. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Zogenix, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 10, 2022       **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
**OF COUNSEL:**              3828 Kennett Pike, Suite 208
                             Wilmington, DE 19807
**BRAGAR EAGEL & SQUIRE, P.C.**   Telephone: (302) 729-9100
Alexandra B. Raymond          Email: BDLong@longlawde.com
810 Seventh Avenue, Suite 620
New York, NY 10019            *Attorneys for Plaintiff*
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*